## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ASHLEY M. MAHDY, *et al.*

        Plaintiffs,

    vs.                                                          No. 13-CV-0852-MV-LAM

LARRY J. CEARLEY, *et al*.

        Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss and

Alternative [sic] Motion for Summary Judgment [Doc. 37].  The Court, having considered the

Motion, briefs, relevant law, and being otherwise fully informed, finds that the Defendants'

Motion is well-taken in part and will be **GRANTED IN PART**.

### BACKGROUND

The facts pertinent to the Court's disposition are easily summarized.  Sometime in the

early summer of 2013, Defendant Larry Cearley, the Marshal of Magdalena, New Mexico

received a tip from a confidential informant that Plaintiffs "Ashley and Lottie Mahdy were

growing marijuana" in a recreational vehicle ("RV") parked at the Western Motel in Magdalena.

Doc. 37 at 3.  Cearley subsequently drafted a warrant application that relied on the statement of

this confidential informant that "marijuana plants were being grown in a motor home or RV on

the Western Motel property" and the statement of at least one other witness that an unusual

number of people had come and gone from the property in question, each of whom stayed only a

short time. *Id.* at 3-4.  On July 8, 2013, a state court magistrate signed the search warrant. *Id.* at 4.  *See also* Doc. 43 at 5.

On July 11, 2013, Cearley, along with other government agents, executed the search warrant. *See* Doc. 37 at 4; Doc. 43 at 6.  There is a dispute between the parties regarding Defendant Cearley's role in the search, which ultimately encompassed Plaintiffs Mansell and Szabo-Williams, but, for the reasons described below, the Court finds that this distinction is largely immaterial. *See* Doc. 37 at 4-5; Doc. 43 at 6-7.  The Plaintiffs now bring the instant action pursuant to Section 1983 and New Mexico state law, claiming, *inter alia*, that Cearley violated their Fourth Amendment rights; the Defendant has moved for dismissal or summary judgment, raising the defense of qualified immunity.

In the interest of considering the broadest set of materials available and resolving this matter expeditiously, the Court will treat this as a motion for summary judgment. *See, e.g.*, *In re Natural Gas Royalties*, 562 F.3d 1032, 1038 (10th Cir. 2009) ("Because the special master and district court considered evidentiary materials and because the jurisdictional question was intertwined with the merits, the special master and district court properly treated Defendants' motions to dismiss as motions for summary judgment.").

## DISCUSSION

### I.   Summary Judgment in Qualified Immunity Cases

The well-trod standard on a motion for summary judgment shifts significantly where, as here, the defendant invokes the protection of qualified immunity. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).  In such instances, the plaintiff bears the "heavy two-part burden" of establishing that "the defendant's actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time of the

2

defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted).  If the plaintiff meets its burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendant to demonstrate that no genuine issue of material fact exists that would defeat its claim for qualified immunity.  *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).  Here, Plaintiffs have failed to demonstrate that any federal right was violated, such that the Court need not reach traditional summary judgment analysis.

## II.    Plaintiffs' Response Does not Demonstrate a Constitutional Violation

Curiously, Plaintiffs, despite requesting "separate analysis of their own situation[s]" do not present a statement of additional facts in their Response that might aid the Court in conducting such an analysis.  *See generally* Doc. 43.  Instead, Plaintiffs appear to have attempted to introduce facts in their refutation of Defendants' Statement of Undisputed Material Facts; the result is an undifferentiated morass of factual assertions that fails to comply with local rule 56.1(b).  *See* D.N.M.LR-Civ.56.1(b).  Even so, in the interest of resolving this dispute on the merits, the Court will divine, as best it can, the constitutional violations alleged and the factual material proffered to support those contentions.  *See* D.N.M.LR-Civ.1.7 ("These rules may be waived by a Judge to avoid injustice.").  This task is rendered yet more complicated by the fact that it is not entirely clear how Plaintiffs' Complaint maps on to its Response to the Motion, such that the Court will address those arguments defended in the Response and those merely alleged in the Complaint separately.

a. *False Warrant Affidavit*

Plaintiffs' brief first argues that Defendant Cearley knowingly or recklessly submitted a false affidavit in support of the warrant he obtained to search the premises. *See* Doc. 43 at 9-10. While such allegations plainly make out a constitutional violation, Plaintiffs cannot meet their burden in this case. Simply stated, Plaintiff's allegation that Cearley submitted a false affidavit to the magistrate rests entirely on speculation and the misconstrued testimony of participating officers. By way of example, Plaintiffs insinuate that Cearley ought to have known that his search warrant affidavit was incorrect because he did not investigate the "tip from a confidential informant" and that "all other law enforcement [sic] involved have expressed that it is objectively unreasonable to do so." Doc. 43 at 3. This grossly mischaracterizes the deposition testimony to which Plaintiffs cite, in which the officer states that it is "routine" to conduct a "pre-search investigation in connection with a raid of this level" and that he would have acted differently, *not* that Cearley's conduct was "unreasonable" nor that Cearley should have doubted the reliability of the information. Doc. 43-1 at 6-7.

Similarly, Plaintiffs argue, without citation, that "the officers who volunteered to assist Cearley in this search could tell immediately upon arriving on the scene and seeing the RV where this operation was supposedly taking place that this allegation was preposterous." Doc. 43 at 9. Not only does this characterization misrepresent the deposition testimony of the agents, none of whom implied that it was "preposterous" to suspect that the RV housed a marijuana operation, but also, it suggests that, somehow, what Cearley saw when he *executed* the search warrant could inform what he knew when he *procured* the warrant. This is absurd. *Cf. Harman v. Pollock*, 446 F.3d 1069, 1079 (10th Cir. 2006) ("The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to

disclose, to the issuing Magistrate.") (quoting *Maryland v. Garrison*, 480 U.S. 79, 85 (1987)).

Hence, while Plaintiffs urge that "Cearley had no basis whatsoever for believing that marijuana

was being grown in any other building or structure," it is apparent that Plaintiffs have no factual

support for this rank speculation. Doc. 43 at 5. On these facts, Plaintiffs cannot meet their heavy

burden of establishing that Cearley knowingly or recklessly submitted a false affidavit.

     b.  *The Warrant Issued on Probable Cause*

Second, Plaintiffs contend that the warrant should not have issued because "Clearley's

affidavit states no basis for relying on the confidential informant" and otherwise lacked probable

cause. Doc. 43 at 10. As an initial matter, the Court notes that where an officer conducts a

search pursuant to a warrant the question under qualified immunity analysis is not whether the

Court believes that the warrant should have issued, but rather whether "it is obvious that no

reasonably competent officer would have concluded that a warrant should issue" given the

circumstances. *Messerchmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (internal quotation

marks omitted). Hence, immunity will only be overridden in instances where, for example, "the

warrant was based on an affidavit so lacking in indicia of probable cause as to render official

belief in its existence entirely unreasonable." *Id.* Nothing in the warrant application or the facts

articulated by Plaintiffs points to any major deficiency in the warrant application, much less an

infirmity so obvious and significant that it can meet the extremely high threshold of upsetting the

"clearest indication that the officers acted in an objectively reasonable manner" in searching the

premises: a search warrant issued by an impartial magistrate. *Id.* To the contrary, many of the

attacks launched by Plaintiffs against the warrant are entirely without merit.

First, Plaintiffs state that "the idea that 200 marijuana plants could be grown in an RV not

connected to water, electricity, with uncovered windows… is implausible on its face." Doc. 43

at 10-11.  However, the affidavit refers only to "about one hundred marijuana plants" and even the deposition transcripts provided by Plaintiffs notes that it would be possible for two hundred small marijuana plants to fit in the mobile home.  *See* Doc. 37-1 at 8; Doc. 43-1 at 9.  Second, Plaintiffs assert that there "is nothing to indicate that Cearley knew this particular informant had provided good tips in the past."  Doc. 43 at 11.  This contention is flatly contradicted by the affidavit, in which Cearley explains that the confidential source both "has knowledge [of] and is familiar with the cultivation, appearance and odor associated with marijuana" and "has been used in the past and with that information criminal charges were filed which caused convictions of the defendants in those cases."  Doc. 37-1 at 8.  Third, while Plaintiffs argue that the "affidavit simply does not describe the basis for the informant's tip (whether based on hearsay or firsthand knowledge)" the affidavit clearly states that the "source has seen the marijuana plants in the Motor Home and the weapons inside the residence."  *Compare* Doc. 43 at 11 *with* Doc. 37-1 at 8. Fourth, the admittedly vague information regarding the "juveniles" that "go and come staying only a short while" was, evidently, provided by a *separate* witness, not the confidential informant.  Doc. 37-1 at 9.  Thus, this statement, rather than illustrating the weakness of the tip provided by the confidential informant actually serves as independent, albeit circumstantial, corroboration of what the informant had told Cearley.  This holding renders Plaintiffs' invocation of *Quezada-Enriquez* unavailing; there, unlike here, the warrant affidavit "did not disclose the basis of the informant's knowledge."  *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1230 (10th Cir. 2009).

Irrespective of whether this Court would have approved the warrant in the first instance, the Plaintiffs have not met their burden of demonstrating that no reasonably competent officer would believe that probable cause should issue based on the affidavit.  To the contrary, on the

Court's reading, each specific criticism of the affidavit presented by Plaintiffs is demonstrably false and the affidavit does contain indicia supporting probable cause. *See, e.g.*, *United States v. Campbell*, 603 F.3d 1218, 1234 (10th Cir. 2010) (discussing "[v]eracity, reliability, and basis of knowledge" as "extremely relevant factors in deciding whether a tip can support probable cause"). Therefore, because the warrant affidavit is not obviously deficient, the Court will not upset the determination of the magistrate that issued the warrant.

     c.  *Defendants Exceeded the Scope of the Warrant*

     Third, Plaintiffs allege that the officers violated the Fourth Amendment by exceeding the scope of the warrant issued for the search of the hotel and its environs. In essence, this complaint contains two separate propositions: that Cearley and the officers exceeded the scope of the written warrant and that the warrant he obtained was overbroad. It is obvious that Cearley and the officers did not search beyond those locations described in the warrant and supporting affidavit; the "single wide mobile home used as a rental for the motel" is plainly encompassed within the meaning of "outbuilding" in the warrant. Doc. 37-1 at 16. This is reading is buttressed by the deposition testimony provided by Plaintiffs, which support the view that Cearley believed the mobile home was unrented and was being used by the Mahdys on a regular basis. *See* Doc. 43 at 7; Doc. 43-1 at 3-4. While Plaintiffs assert that this was a fabrication, there is no suggestion from the cited deposition testimony that Cearley did not believe what he told officers about the mobile home.

     Moreover, *Harman*, relied upon by Plaintiffs, reinforces this conclusion. There, the court held that because officers "suspected the main home's occupants used the garage apartment as a place to store and use drugs" the "indicia of a dwelling… did not so thoroughly dispel this idea [of a crash pad] as to dispel probable cause." *Harman*, 586 F.3d at 1262 (modification original)

(internal quotation marks omitted).  So it is here.  Given that all the evidence in this case indicates that the officers that searched the mobile home believed that the Mahdys used it to grow or distribute marijuana, the mere presence of other individuals did not upset the magistrate's determination of probable cause.  Further, the presence of two teenagers actually conforms with the report Cearley had received that an unusual number of "juveniles" had been observed visiting the premises for a short time; the two young people officers found could easily have been accomplices, associates, or customers.  *See* Doc. 37-1 at 9.

Similarly, the warrant, while certainly broad, does not so obviously constitute a "general warrant" that it overcomes the protections afforded by qualified immunity.  Here, the supporting affidavit is incorporated by reference into the search warrant.  *See United States v. Pulliam*, 748 F.3d 967, 973 (10th Cir. 2014) ("the warrant may cross-reference other documents, such as the affidavit in support of the application, to satisfy the particularity requirement.").  That affidavit, in turn, is sufficiently precise to "enable[] the searcher to reasonably ascertain and identify the things authorized to be seized."  *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011) (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005)).

      d.  *Supervisory Liability under Section 1983*

Because the Court finds that qualified immunity bars suit against Cearley and all of the officers involved, there can be no supervisory liability, either against Cearley or the municipality.  *See, e.g.*, *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers."); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (section "1983 allows a plaintiff to impose liability upon a defendant-supervisor" who causes or is responsible for "the deprivation of any [federal] rights").  This conclusion is buttressed by the fact that Plaintiffs' Response contains

scant reference to the conduct of the other officers and what, if any, constitutional protections
they breached.

### III.     Other Federal Claims in the Complaint

Plaintiffs appear to have abandoned their claims for "False Arrest" and "Excessive
Force" in their Response.  *Compare* Doc. 1 at 22-23 *with* Doc. 9-13.  *See also Hinsdale v. City
of Liberal, Kan.*, 19 F. App'x. 749, 768-69 (10th Cir. 2001) (affirming summary judgment on a
claim abandoned in summary judgment briefing); *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388
(10th Cir. 1992) (same).  However, even if Plaintiffs wished to maintain these claims, they have
adduced *no* facts in their Response to corroborate the contention that Cearley or the officers
falsely arrested *anyone* or that any of them used excessive force in doing so.  Consequently,
Plaintiffs have not met their burden of overcoming Cearley's invocation of qualified immunity,
such that these claims, too, cannot survive.  *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly
support an assertion of fact or fails to properly address another party's assertion of fact as
required by Rule 56(c), the court may… grant summary judgment if the motion and supporting
materials--including the facts considered undisputed--show that the movant is entitled to it.").
*See also United States v. Hopkins*, 927 F. Supp. 2d 1120, 1155  (D.N.M. 2013) ("It is not enough
for the party opposing a properly supported motion for summary judgment to rest on mere
allegations or denials of his [or her] pleadings.") (internal quotation marks omitted).

### IV.     State Law Claims

The remaining claims in this case all arise under state law; the Court is thus permitted to
dismiss those claims over which it initially exercised supplemental jurisdiction.  *See* 28 U.S.C. §
1367(c)(3).  Here, given that this litigation has not progressed significantly, the Court will accede

to the Tenth Circuit's request that district courts "should decline the exercise of jurisdiction by dismissing the case without prejudice" where all federal law claims are dismissed before trial. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010).

## CONCLUSION

Because Plaintiffs have not met their burden of overcoming Defendants' assertion of qualified immunity, summary judgment will be granted in favor of the Defendants on each of the Plaintiffs' federal claims.  Each of the state law claims will be dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's Defendants' Motion to Dismiss and Alternative [sic] Motion for Summary Judgment [Doc. 37] is **GRANTED IN PART** and that all of the remaining state law claims are **DISMISSED WITHOUT PREJUDICE.**

Dated this 24th day of March, 2015.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE